

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| v. § | **CASE NO. 1:05-CR-136(4)** |
| § | |
| **YONGUE JOHN GROGAN** § | |

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO**
**SUPPRESS CONTENTS OF INTERCEPTED COMMUNICATIONS**

Pursuant to 28 U.S.C. § 636(b) and the Local Rules for the United States District Court, Eastern District of Texas, by order of the District Court, this matter was referred [1] to the undersigned magistrate judge for the submission of a report and recommendation on *Defendant's Motion to Suppress Contents of Intercepted Communications* [Clerk's doc. #208].

### A.  Background

### The Charges

On September 13, 2005, a federal grand jury sitting in the Eastern District of Texas, Beaumont Division, indicted the Defendant and four other individuals. Count I of the Indictment charges Defendant with conspiring with his co-defendants, and other individuals, to possess with the intent to distribute crack cocaine, in violation of Title 21, United States Code, Section 846. Count

---

[1] See *Order* referring motion. [Clerk's doc. #209].

VI of the Indictment alleges that Defendant, on or about June 20, 2005, possessed with the intent to distribute crack cocaine, in violation of Title 21, United States Code, Section 841(a)(1). Subsequently, on January 4, 2006, the grand jury returned a First Superseding Indictment. The First Superseding Indictment added additional defendants but did not amend the charges against Defendant.

### Defendant's Motion

Defendant states (and the record indicates) that on June 1, 2005, the Government filed an application for authorization of the interception of wire communications, stating in the application that John C. Richter, Acting Assistant Attorney General, had given authorization. However, Defendant correctly points out that the Memorandum of Authorization attached to the application was in fact a memorandum from John C. Richter, Acting Assistant Attorney General, Criminal Division, to Maureen H. Killion, Director of the Office of Enforcement Operations, Criminal Division. This memorandum was not signed by John C. Richter, but was executed by Mary Lee Warren, Deputy Assistant Attorney General, Criminal Division. The relevant order provided to and signed by the District Court authorized law enforcement officers to intercept such wire communications, pursuant to an application authorized by John C. Richter.

Defendant correctly notes that each application for an order authorizing the interception of wire communications shall state the applicant's authority to make such application. *See* 18 U.S.C. § 2518(1)(a). Defendant argues that the unsigned memorandum authored in Richter's name does not refer to Mary Lee Warren and the authorization memorandum does not set out a particular individual who stated that they authorized the application. Therefore, Defendant contends that the evidence obtained via the interceptions at issue should be suppressed because that District Court's

order granting the request for wire interception was based upon an authorization memorandum which does not correctly set forth the person actually authorizing the application.

**Government's Response**

The Government responded to the instant motion to suppress on April 12, 2006 [Clerk's doc. # 212]. The Government argues that Ms. Warren, as a Deputy Assistant Attorney General, had the proper authority to authorize the wiretap application under Attorney General Order number 2578-2005. The Government further argues that the fact that the memorandum was apparently prepared or dictated by Mr. Richter but was signed by Ms. Warren is of no consequence.[2]

**B. Legal Analysis**

**Did Mary Lee Warren have authority to authorize the wiretap application?**

An application to intercept wire communications submitted to a judge must be authorized by one of the officials listed in the governing statute, 18 U.S.C. § 2516(1). The list includes any Deputy Assistant Attorney General in the Criminal Division specially designated by the Attorney General. *See* 18 U.S.C. § 2516(1). In Order No. 2758-2005, issued by the Office of the Attorney General, Attorney General Alberto R. Gonzales specially designated the Assistant Attorney General in Charge of the Criminal Division, any Acting Assistant Attorney General in charge of the Criminal Division, any Deputy Assistant Attorney General of the Criminal Division, and any Acting Deputy Assistant Attorney General of the Criminal Division to exercise the power conferred by Section 2516(1) of Title 18, United States Code, to authorize applications to a federal judge of competent

---

[2] In its response, the Government relies on *United States v. Corriette,* No. 05-11745, 2006 WL 690851, 2006 U.S. App. LEXIS 6867 (11th Cir. March 20, 2006), *United States v. Ceballos*, 302 F.3d 679 (7th Cir. 2002), and *United States v. Anderson*, 39 F.3d 331 (D.C. Cir. 1995) (*vacated in part on other grounds.*, 59 F.3d 1323 (D.C. Cir. 1995) (en banc), *cert. denied* 516 U.S. 999 (1995)).

jurisdiction for orders authorizing or approving the interception of wire or oral communications. *See* Order No. 2758-2005.[3]   The signature line on the May 25, 2005, memorandum authorizing the interception order application clearly indicates that Mary Lee Warren is a Deputy Assistant Attorney General in the Criminal Division.  As such, pursuant to Order No. 2758-2005 and 18 U.S.C. § 2518(1)(a), Ms. Warren clearly had the requisite power to authorize the application presented to the district court.

### Is the application defective due to the fact that the authorization letter was apparently dictated or composed by Mr. Richter but signed by Ms. Warren?

This Court must, therefore, turn to the issue of whether the application is defective because the approval memorandum was signed by Ms. Warren instead of Mr. Richter.  The Court refers to the cases cited by the Government.  In *Corriette*, the appellants complained that the memorandum appeared to be authored by and/or prepared for the signature of Christopher Wray, the Acting Assistant Attorney General in the Criminal Division, but was signed by Bruce Swartz, the Deputy Assistant Attorney General of the Criminal Division. 2006 WL 690851 at *1.  The Eleventh Circuit Court of Appeals held that there was no material significance in the fact that Wray's name also appeared on the memoranda because Wray's signature lines remained blank.  *Id.*  The Court noted that Swartz's name and title appeared below Wray's signature line and, therefore, Swartz did not sign for Wray, but for himself.  *Id.*  Since Swartz was one of the designated officials who had the authority to approve a wiretap application, the Court found the application to be proper.  *Id.*

As noted by the Government, the Court of Appeals for District of Columbia has also

---

[3] The Attorney General Order No. 2758-2005, along with the memorandum authorizing the interception order application at issue, were originally filed with the Government's *Application for Authorization of the Interception of Wire Communications*.  Those documents and Judge Heartfield's order authorizing the interception are all part of the record, filed under seal, in cause number 1:05-MC-7.

addressed this issue. In *Anderson*, the appellants argued that the application was defective because the person who signed the memoranda did not actually write them, i.e., the memos purported to be from Acting Assistant Attorney General Edward Dennis but were actually signed by a Deputy Assistant Attorney General. 39 F.3d at 339. The Court held that the fact that the memos were purported to be from Dennis but signed by other people was irrelevant to the purposes of the statute because those persons who did sign the applications were identifiable. *Id.*

This Court finds *Corriette* and *Anderson* persuasive, and the Defendant has not offered any case law suggesting otherwise. Accordingly, the Court holds that the Title III intercept in question was authorized by an identifiable Department of Justice official who possessed statutory authority.

**Is the order signed by the District Court facially invalid because it misidentified the authorizing Department of Justice official?**

The Court further concludes that the fact that the District Court's order misidentified the authorizing official is not grounds for suppression. In *United States v. Giordano*[4], the Supreme Court addressed the issues of which members of the Department of Justice could authorize wiretap applications under Title III and whether suppression was required when an order was not properly authorized. *See also United States v. Callum*, 410 F.3d 571, 574 (9th Cir. 2005), *cert. denied* 126 S. Ct. 318, 163 L. Ed. 2d 278 (1995) (holding that the fact that the application for a wiretap order which did not indicate who at the D.O.J. authorized the application was facially insufficient did not render interceptions unlawful). The order at issue in *Giordano* stated that the wiretap application had been authorized by a specially designated Assistant Attorney General, but, in fact, was actually authorized by the Executive Assistant to the Attorney General. *Giordano*, 416 U.S. at 509-10. The Supreme

---

[4] 416 U.S. 505, 94 S.Ct. 1820, 40 L. Ed. 2d 341 (1974).

Court found that, despite the mistake, the order clearly identified, although erroneously, an appropriate DOJ official who had authority to approve the intercept. *Id.* at 525 n.14. Therefore, the order was facially sufficient under Section 2516(1).[5] *Id. See also Callum*, 410 F.3d at 575 (Citing *Giordano*). Relatedly, in *United States v. Chavez*[6], the Supreme Court held that a wiretap order which incorrectly identified an Assistant Attorney General as the authorizing official when the authorization had actually been received from the Attorney General (who certainly had authority) himself did not render the wiretap order facially insufficient. *Id.* at 573-74.

Reading *Giordano* and *Chavez* together, it is clear that the Supreme Court was far more concerned with the wiretap applications being authorized by an empowered DOJ official than with correct identification of that official in the wiretap applications and orders. *Callum*, 410 F.3d at 575. The absence of valid authorization in *Giordano* and the presence of valid authorization in *Chavez* explain why suppression was ordered in the former case but not the latter. *Id.* Under *Callum*, *Giordano* and *Chavez*, the Court concludes that a wiretap order can list an incorrect source of DOJ authority without creating a facial insufficiency, provided that the source listed is statutorily empowered to exercise authority. *See id.* at 576. Accordingly, in this case, although a mistake was made and the District Judge was presented with an erroneous order, suppression is not warranted because that order is facially sufficient.

    **C.**    **Conclusion and Recommendation of the Court**

---

[5] The Supreme Court ultimately held, based upon the facts at issue in *Giordano,* that the communications were unlawfully intercepted and should be suppressed because the Executive Assistant to the Attorney General lacked statutory authority. 416 U.S. at 527, 94 S.Ct at 1820.

[6] 416 U.S. 562, 94 S. Ct. 1849, 40 L. Ed. 2d 380 (1974)

Accordingly, having considered the factors and evidence presented, and based upon the findings of fact and conclusions law stated herein, the undersigned magistrate recommends that the District Court deny Defendant's *Motion to Suppress Contents of Intercepted Communications.* [Clerk's doc. #208].

**D.     Objections**

Pursuant to 28 U.S.C. § 636(b)(1)(C), all parties are entitled to serve and file written objections to the report and recommendation of the magistrate judge within ten (10) days of receipt of this report.  Failure to file specific, written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within ten (10) days after service shall bar an aggrieved party from *de novo* review by the District Judge of the proposed findings, conclusions and recommendations, and from appellate review of factual findings and legal conclusions accepted by the District Court except on grounds of plain error. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Douglass v. United Serv. Auto. Ass'n.,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*); 28 U.S.C. § 636(b)(1).  The constitutional safeguards afforded by Congress and the courts require that, when a party takes advantage of his right to object to a magistrate's findings or recommendation, a district judge must exercise its nondelegable authority by considering the actual evidence and not merely by reviewing and blindly adopting the magistrate's report and recommendation.  *See Hernandez v. Estelle,* 711 F.2d 619, 620 (5th Cir. 1983); *United States v. Elsoffer*, 644 F.2d 357, 359 (5th Cir. 1981) (per curiam).

**SIGNED this the 11th day of May, 2006.**

_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE